Trinette G. Kent (CA Bar No. 222020)
KENT LAW OFFICES
1333 Stradella Road
Los Angeles, CA 90077
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@kentlawpc.com

Jonathan B. Piper
*(pro hac vice to be submitted)*
Molly Stemper
*(pro hac vice to be submitted)*
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: (312) 658-5500
Fax: (312) 658-5555
service@classlawyers.com

Attorneys for Plaintiff, Angel Orlando, individually and as the representative of a class of similarly-situated persons

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Angel Orlando, individually and as the representative of a class of similarly-situated persons,<br><br>     Plaintiff,<br><br>v.<br><br>Ipsos Public Affairs, LLC d/b/a KnowledgePanel,<br><br>     Defendant. | Case No.: **20-cv-9579**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# CLASS ACTION COMPLAINT

Angel Orlando ("Plaintiff") brings this action on behalf of himself and all similarly situated and, except for allegations pertaining to Plaintiff or its counsel, which are based upon personal knowledge, alleges as follows upon information and belief against defendant Ipsos Public Affairs, LLC d/b/a KnowledgePanel ("Defendant"):

# INTRODUCTION

1. Defendant is a for-profit research corporation that designs and conducts surveys, pays consumers to complete those surveys, offers merchandise to survey participants, and sells the survey results to various commercial entities.

2. Defendant made several automated or prerecorded telemarketing calls to Plaintiff and others in violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, including regulations the Federal Communications Commission ("FCC") prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

3. The TCPA was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance telemarketing practices, described as "the scourge of modern civilization." *See, e.g., Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2344 (2020) *citing* 137 Cong. Rec.

1  30821 (1991). At the time, telemarketers were calling 18 million Americans
2  every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18
3  FCC Rcd. 14014, 14021 ¶ 8 (2003) ("2003 Order"). By 2019, this number
4  jumped to a staggering 160 million. YouMail, *Historical Robocalls By Time*,
5  https://robocallindex.com/history/time (visited Aug. 21, 2020) ("YouMail");
6  *Report on Robocalls*, CG Docket No. 17-59, FCC (Feb. 2019), https://docs.
7  fcc.gov/public/attachments/DOC-356196A1.pdf ("2019 FCC Report").

8      4.    This case challenges Defendant's practice of initiating autodialed[1]
9  or prerecorded[2] telemarketing calls ("robocalls") to cellular telephones
10 without the prior express written consent of the called parties as required by
11 the TCPA. 47 C.F.R. § 64.1200 (a) (2), (f) (8) (i).

12     5.    In 2020, Defendant made at least nine automated or prerecorded
13 telemarketing calls to Plaintiff's cellular phone soliciting his, and his
14 household members', participation in nationwide studies in exchange for
15 money or other rewards. In at least two instances, Defendant left prerecorded
16 voicemails in Plaintiff's voicemail.

---

[1] "Autodialed" means the call was placed with an "automatic telephone dialing system," or "ATDS," or "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

[2] "Prerecorded" means "artificial or prerecorded voice" calls or messages.

6. Plaintiff did not give prior express written consent to receive an autodialed or prerecorded phone call on his cellular phone from Defendant.

7. Plaintiff repeatedly asked Defendant to stop calling, to no avail.

8. Plaintiff seeks class-wide relief against Defendant for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227. A class action is the best means of obtaining redress for Defendant's illegal calls and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

9. Defendant's practice caused actual harm to Plaintiff and the other members of the class in several ways, including temporarily using their cellular phones and tying up their lines, invading their privacy, causing wear and tear on their cellular phones, consuming battery life, and causing some of them to be charged for calls they did not want to receive. Moreover, these calls injured Plaintiff and the class because they were frustrating, obnoxious, annoying, a nuisance, disturbed their solitude and wasted their time.

## PARTIES

10. Plaintiff, Angel Orlando, is an individual and a citizen of Woodland Hills in Los Angeles County, California.

11. Defendant Ipsos Public Affairs, LLC d/b/a KnowledgePanel, is incorporated in Delaware and headquartered in New York, New York.

## JURISDICTION AND VENUE

12. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute.

13. Personal jurisdiction exists in this Court because a substantial portion of the conduct took place in this District, Defendant transacted business and made or performed contracts substantially connected with the State and purposely directed activities at residents within the forum.

14. Venue is proper in this District because Defendant had sufficient contacts with this District, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## TCPA AND BACKGROUND ENFORCEMENT

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry and use of robocalls, a phenomenon described by one senator as "the scourge of modern civilization." *Barr*, 140 S. Ct. at 2344 *citing* 137 Cong. Rec. 30821 (1991).

16. "Consumers were 'outraged' and considered robocalls an invasion of privacy 'regardless of the content or the initiator of the message." *Id.* at 2344. And Congress found that "banning robocalls" was "the only effective

means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* (internal citation omitted).

17. Despite nearly three decades of legislative intervention and technological advancements, the number of robocalls placed to Americans on a daily basis continues to rise, from 18 million in 1991,[3] to 104 million in 2003,[4] to 160 million in 2019.[5]

18. "Currently, the only certain way to determine whether a call is wanted or unwanted is to answer it or let it go to voicemail, and hope the caller leaves a message." 2019 FCC Report, at ¶ 15. It is therefore unsurprising that nearly thirty years later, Americans remain "united in their disdain for robocalls." *Barr*, 140 S. Ct. at 2343.

19. The TCPA requires prior express written consent for all autodialed or artificial prerecorded telemarketing calls to cellular telephone numbers. 47 U.S.C. §227(b)(1)(A)(iii); 47 C.F.R. § 64.1200 (a)(2).

20. "The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements

---

[3] *2003 Order*, 18 FCC Rcd. 14014, 14021 ¶ 8 (2003).
[4] *Id.*, at ¶¶ 2, 8.
[5] YouMail; 2019 FCC Report.

6

or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

21. "The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8)(i)(A).

22. According to the FCC, "[t]he term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(9).

23. A "seller" may be liable for telemarketing activities that it outsources, even if it does not physically place the calls. *See, e.g., In re DISH Network,* 28 FCC Rcd at 6588, ¶ 37 (a seller may not avoid TCPA liability "by outsourcing its telemarketing activities to unsupervised third parties").

24. Even more, called parties may obtain "evidence of these kinds of [telemarketing or outsourcing] relationships ... through discovery, if they are not independently privy to such information." *Id.* at 6592-93, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.*

25. Under principles of agency and apparent authority, Defendant is vicariously liable for the robocalls placed to the cellular phones of Plaintiff and the class marketing Defendant's paid survey products and services.

26. Defendant ratified and accepted the benefits of the robocalls and it appeared to Plaintiff and the class that the calls were made with Defendant's authority.

## FACTS

27. Advertising to cellular phones uses the called party's equipment. The only ways for a called party to distinguish unwanted, unsolicited advertising or robocalls from wanted or solicited calls is to answer the call or let it go to voicemail and see whether the caller leaves a message.

28. Defendant solicits business through robocalls to cellular phones. These calls are made directly by Defendant, or by a telemarketer acting on Defendant's behalf.

29. The autodialer is programmed to connect only answered calls with a live representative. Once the autodialer connects Defendant or its telemarketer with a consumer through a robocall, Defendant or its telemarketer ultimately transfers the call to one of Defendant's agents to solicit business.

30. Defendant is a for-profit research corporation that designs and conducts surveys, pays household members when they enroll in Defendant's paid survey service and complete Defendant's surveys, and sells the survey results to its commercial clients.

31. Defendant, directly or through a telemarketer it retained, transmitted robocalls to cellular phones—those of Plaintiff and the other members of the putative class—to promote Defendant's products and services without the called parties' prior express written consent (the "calls at issue").

32. The calls at issue are not themselves survey calls; *i.e.,* the calls' purpose is to solicit participation in future surveys, but surveys are not conducted as part of the call itself. The profitability of Defendant's business depends on the recruitment of survey participants through such calls.

9

33. The calls at issue were designed to encourage and offer Defendant's goods or services for purchase and sale, including the exchange of call recipients' time spent and opinions offered in responding to Defendant's surveys for money or other rewards available for purchase through Defendant's website.

34. The calls at issue invite call recipients and their household members to enroll in Defendant's paid survey service and receive money or other rewards available for purchase on Defendant's website. Specifically:

> [Survey respondents] will be given 1,000 points for every survey session [they] complete, which is equal to $1. [Respondents] can redeem [those] points for cash, games, gift cards, or a vast selection of merchandise from [Defendant's] customized, online marketplace."

https://join.knpanel.com/rewards.html.

35. The calls at issue induced recipients to call Defendant, or visit Defendant's website (https://join.knpanel.com), to seek further information regarding how the call recipients and their household members can enroll in Defendant's paid survey service and receive money or other rewards available for purchase on Defendant's website.

36. The calls at issue sought to promote or enhance the quality or quantity of Defendant's market research products and services, which Defendant sells to third-party commercial entities.

10

37. Defendant's commercial clients use Defendant's market research products and services to influence the purchasing decisions of third parties.

38. The calls at issue directly or indirectly encouraged the recipient and his or her household members to influence the purchasing decisions of third parties by enrolling in Defendant's paid survey program and responding to surveys conducted on behalf of Defendant's commercial clients.

39. The calls at issue make clear that Defendant seeks to purchase the time and opinions of the call recipients and their household members with money or other rewards available for purchase on Defendant's website.

40. The calls at issue were part of an overall marketing campaign to advertise Defendant's paid survey service and increase the number of responses to, and therefore the overall commercial value of, Defendant's surveys.

41. The calls at issue were pretexts to advertise further commercial goods and services available for purchase and sale on Defendant's website.

42. Defendant's surveys are pretexts to advertise products available for purchase either through Defendant's online marketplace or from third parties for whom Defendant is conducting the surveys.

43. Between May 2, 2020 and June 14, 2020, Defendant placed at least nine robocalls to plaintiff, including:

a. two calls that resulted in Defendant leaving the following, 31-second voice message on Plaintiff's answering machine:

> Good afternoon this is [Anthony/Star] calling on behalf of Knowledge Panel, a research community. Your home has been specially selected to participate in the Knowledge Panel, a unique nationwide study. This opportunity will allow you to earn money or other rewards. We're expecting your opinion, you can take a look at our website at https://join.knpanel.com/. We'll call back or you can call us toll free at 1-844-852-7636 we look forward to speaking with you soon. Thank you;

b. three calls that Plaintiff rejected without answering;

c. four calls that—upon answering—Plaintiff was met with a period of dead silence, and was only connected to a live person after hearing a "click"; and

d. six calls that were placed after Plaintiff specifically requested that Defendant stop calling.

44. The distinctive pause and "click" after Plaintiff answered is evidence of the caller's use of a predictive dialer, which uses an algorithm to "predict" when telemarketing agents will be available to field the call. *See* 2003 Order, 18 FCC Rcd. at 14022, n. 31.[6]

---

[6] "[I]n 2003, the FCC expressed growing concern about the proliferation of predictive dialing systems that use "a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that predicts the time when a consumer will answer the phone and the telemarketer will be available to take the call."

45. The distinctive pause and a "click" after Plaintiff answered is evidence of the caller's use of an "automatic telephone dialing system," or "ATDS," defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

46. "The statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018).

47. Defendant (or its telemarketer) used a device that had either: (A) the capacity to call numbers produced using a random or sequential number generator, or (B) the capacity to dial stored numbers automatically. *Id.*

48. The above facts demonstrate that the calls were made as part of a telemarketing campaign, and that the calls were made using an ATDS and a prerecorded voice.

13

49. Neither Plaintiff nor anyone else acting on Plaintiff's behalf gave Defendant Plaintiff's cellular telephone number or requested that Defendant call his cellular phone about paid survey products or services.

50. Neither Plaintiff nor anyone else acting on Plaintiff's behalf gave express consent, in writing, to receive Defendant's autodialed or prerecorded telemarketing calls on his cellular phone.

## CLASS ALLEGATIONS

51. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this action against Defendant on behalf of himself and all other persons similarly situated throughout the United States.

52. Plaintiff proposes the following class definition:

> All persons in the United States to whom one or more telemarketing or advertising calls were initiated (1) to their cellular telephone number, (2) by or on behalf of Defendant, (3) using an automatic telephone dialing system or an artificial or prerecorded voice, (4) without their prior express written consent, and (5) at any time during the applicable statutory period.

53. Excluded from the class are Defendant, any entity in which Defendant has a controlling interest, each of their respective officers or legal representatives, and any Judge assigned to this action, including his or her immediate family.

14

54. The proposed class members are identifiable through phone records and phone number databases.

55. Plaintiff is a member of the proposed class.

56. The automated technology that Defendant (or its telemarketer) used to call Plaintiff's cellphone is capable of contacting thousands of people a day, and so the potential class members number in the hundreds or thousands, at least. Individual joinder of so many persons is impracticable.

57. Use of a prerecorded voice and voice prompt menu further increases the scale at which Defendant (or its telemarketer) can make the calls without human intervention.

58. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendant (or its telemarketer) used an automatic telephone dialing system or an artificial or prerecorded voice to call the cellular phones of Plaintiff and others;

    b. Whether Defendant (or its telemarketer) initiated telemarketing calls to cellular phones without the prior express written consent of the called parties;

    c. Whether Defendant is liable for its telemarketers' violations of the TCPA;

    d. Whether Plaintiff and the other members of the class are entitled to statutory damages under the TCPA;

15

e. Whether Defendant's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the class; and

f. Whether Plaintiff and members of the class are entitled to equitable relief, including but not limited to injunctive relief.

59. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members and therefore are typical of the claims of class members. Plaintiff and the other class members all received telephone calls to their cellular telephone lines through the same or similar dialing system and or the same or similar prerecorded voice.

60. Plaintiff is an adequate representative of the class because his interests do not conflict with those of the class he seeks to represent. He is a victim of ATDS telemarketing to his cellular phone using a prerecorded voice, without any emergency purpose or his prior express written consent and is committed to the vigorous prosecution of this action. Plaintiff has retained counsel competent and experienced in complex TCPA class action litigation and will vigorously prosecute this action. Plaintiff and his counsel will fairly and adequately protect the interests of members of the class.

61. Common questions of fact and law predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy. The only

individual questions concern identification of class members, which will be ascertainable from records maintained by Defendant or its agents.

62. The likelihood that individual class members will prosecute separate actions is remote because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable given the expense involved and the small recoveries available through individual actions.

## COUNT I - VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*

63. Plaintiff incorporates all preceding paragraphs as though fully set forth herein and brings Count I individually and on behalf of the class.

64. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, 47 U.S.C. §227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice.

65. As a result of Defendant's violations of the TCPA, 47 U.S.C. §227, Plaintiff and members of the class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers

using an ATDS or artificial or prerecorded voice in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

66. Plaintiff and members of the class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. §227, by making calls, except for emergency purposes, to cellular telephone numbers using an ATDS or artificial or prerecorded voice.

67. Defendant's violations were knowing or willful.

68. If the Court determines that Defendant's actions were knowing or willful, then Plaintiff requests that the Court increase the statutory damages up to three times the amount. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, for himself and all class members, requests the following relief:

A. Certification of the proposed class;

B. Appointment of Plaintiff as representative of the class;

C. Appointment of Plaintiff's counsel as counsel for the class;

D. An order awarding statutory damages of at least $500 per phone call at issue pursuant to 47 U.S.C. § 227(b)(3) (B);

E. An order increasing those statutory damages up to three times ($1,500 per call at issue) pursuant to 47 U.S.C. § 227(b)(3)(C);

F. An order enjoining Defendant from engaging in the same or similar unlawful practices alleged herein;

G. An order awarding costs of suit;

H.    Leave to amend this Complaint to conform to the evidence presented at trial; and

I.    Orders granting any other relief this Honorable Court deems equitable, proper, and just.

Dated: October 19, 2020          Respectfully Submitted,

ANGEL ORLANDO, individually and as the representative of all others similarly-situated,

By:    <u>/s/ Trinette G. Kent</u>

Jonathan B. Piper                                Trinette G. Kent
*(pro hac vice to be submitted)*                KENT LAW OFFICES
*Molly Stemper*                                          1333 Stradella Road
*(pro hac vice to be submitted)*                Los Angeles, CA 90077
BOCK HATCH LEWIS & OPPENHEIM, LLC    Telephone: (480) 247-9644
134 N. La Salle St., Ste. 1000               Fax: (480) 717-4781
Chicago, IL 60602                                 tkent@kentlawpc.com
Tel: (312) 658-5500
Fax: (312) 658-5555
service@classlawyers.com